USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 01/09/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MAIE IBRAHIM,  :
                         Plaintiff, :
                         :       19-CV-3821 (VEC)
      -against- :
                         :       <u>OPINION AND ORDER</u>
                         :
FIDELITY BROKERAGE SERVICES LLC, :
                         :
                    Defendant. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Maie Ibrahim brought this action against her former employer, Fidelity Brokerage Services LLC ("Fidelity"),[1] alleging hostile work environment, constructive discharge, and retaliation in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107(1)(a). Fidelity moves to dismiss the hostile work environment and constructive discharge claims, and to strike Plaintiff's allegations pertaining to her employment at a Fidelity branch outside of New York City. For the reasons set forth below, Fidelity's motion to dismiss is DENIED, and Fidelity's motion to strike is GRANTED IN PART and DENIED IN PART. Plaintiff is given leave to amend the Complaint to plead additional facts that would make relevant the stricken allegations, and to amend her first and second causes of action consistent with this opinion.

---

[1] Plaintiff originally sued Fidelity Investments, Inc. By stipulation of the parties, Dkts. 8–9, Fidelity Brokerage Services LLC was substituted as the Defendant and all allegations in the Complaint against Fidelity Investments, Inc, were deemed to have been made against Fidelity Brokerage Services LLC.

1

# I. BACKGROUND[2]

In December 2011, Plaintiff began working at a Fidelity branch in Garden City, New York, where she remained for three-and-a-half years. Compl. ¶¶ 17–18. During that time, she was allegedly discouraged by her manager from seeking a promotion and was passed over in favor of a less qualified man for that position. Compl. ¶¶ 26, 29. After learning that Plaintiff was engaged to be married, her manager suggested that Plaintiff look for other opportunities because "her priorities were about to change." Compl. ¶¶ 30–31. In response to Plaintiff's complaints, Fidelity's human resources department instructed her to speak to her manager (i.e., the alleged harasser) about her concerns. Compl. ¶¶ 32–34.

In July 2015, Plaintiff received a different promotion and began working as a financial consultant for Fidelity at an office in Manhattan. Compl. ¶ 36. While employed at the Manhattan office, Plaintiff was allegedly sexually harassed. In September 2016, Roger Young, a Senior Vice President at Fidelity, allegedly touched her thighs, genitals, and buttocks at a work-related event. Compl. ¶¶ 37–41. Plaintiff also alleges ongoing harassment, from September 2015 to her resignation in April 2018, by her manager Elliott Wiesen. Compl. ¶¶ 44–45. Wiesen allegedly asked her—and only her—to have lunch and coffee together, despite her repeated refusals. Compl. ¶¶ 46–48. He also commented on her attractiveness, hair, clothes, and nails, Compl. ¶¶ 50–51, and invoked sex-based stereotypes, telling her that her husband would need to learn how to cook now that she would be "staying late with" Wiesen, Compl. ¶ 49. On one occasion, apparently unprompted, Wiesen told Plaintiff that his "genitals worked." Compl. ¶ 52.

---

[2] For purposes of Defendant's Rule 12(b)(6) motion to dismiss and Rule 12(f) motion to strike, the Court must "accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (articulating Rule 12(b)(6) standard); *Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002) ("In deciding a Rule 12(f) motion, a court 'must accept the matters well-pleaded as true and should not consider matters outside the pleadings.'" (quoting *LNC Investments, Inc. v. First Fid. Bank*, No. 92-CV-7584, 1997 WL 528283, at *48 (S.D.N.Y. Aug. 27, 1997))).

Additionally, when Wiesen became aware that Plaintiff wanted to conceive, he indicated that she may not be employed much longer, issued her multiple performance warnings, and reduced her work responsibilities. Compl. ¶¶ 53–59 ("During a meeting, [Wiesen] indicated that [Plaintiff] will not be employed shortly after she told him she planned on starting a family."). Sometime in April 2018, Wiesen allegedly steered "an angry and threatening customer," who was not Plaintiff's client, into her office. Compl. ¶ 69.

On April 25, 2018, Plaintiff resigned. *See* Compl. ¶ 71. By that point, Plaintiff had allegedly made multiple written complaints to Fidelity's human resources and to Fidelity's CEO. Compl. ¶¶ 61–62, 64, 67. Fidelity allegedly took no remedial action, except to require Plaintiff to meet, alone, with Wiesen. Compl. ¶¶ 64–66.

Plaintiff commenced this action in New York State Supreme Court; Defendants removed the action on the basis of diversity jurisdiction.[3] Defendant moves to strike the allegations related to Plaintiff's time working in the Garden City branch, and to dismiss Plaintiff's hostile environment claim and constructive discharge theory.

## II. DISCUSSION

### A. Defendant's Motion to Strike

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The Second Circuit has held that "motions to strike material *solely* 'on the ground that the matter is impertinent and immaterial' are disfavored." *Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976))

---

[3] Plaintiff is a New York resident, Compl. ¶ 7, and Defendant is incorporated in Delaware with its principal place of business in Massachusetts. Notice of Removal (Dkt. 1-1) ¶¶ 3–4.

3

(emphasis original). When deciding a "Rule 12(f) motion [made] on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky*, 551 F.2d at 893. Allegations are "'impertinent' or 'immaterial' when [they] are neither responsive nor relevant to the issues involved in the action." *Anderson v. Davis Polk & Wardwell*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.37[3] (3d ed. 2010)). Because Fidelity seeks to strike Plaintiff's Garden City allegations only on the basis that they are "immaterial" and "impertinent,"[4] the motion must be denied unless Fidelity can show that no evidence in support of those allegations would be admissible.

Plaintiff concedes that the Garden City allegations themselves are not actionable under the NYCHRL, Pl.'s Mem. of Law (Dkt. 17) at 5, because the NYCHRL only reaches conduct that has an impact in New York City. *See Hoffman v. Parade Publications*, 15 N.Y.3d 285, 291 (2010) . Plaintiff further concedes that even if the Garden City allegations could give rise to a discrimination claim under the NYCHRL, they would be time-barred. Pl.'s Mem. of Law at 5; *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under . . . the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts." (citing N.Y.C. Admin. Code § 8–502(d))).

Nevertheless, allegations relating to the inefficacy of her internal complaints in Garden City are relevant to her constructive discharge theory. A constructive discharge occurs when an employer intentionally "create[s] an intolerable environment that forces the employee to resign," and the work conditions are "so intolerable that [a reasonable person] would have felt compelled to resign." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 308 (2d

---

[4] Def. Mem. of Law (Dkt. 11) at 5; Def. Reply Mem. of Law (Dkt. 18) at 2 n.1.

Cir. 2017) (citation omitted). Courts "generally [] refuse[] to find a constructive discharge where an employee had an avenue through which she could seek redress for the allegedly 'intolerable' work atmosphere leading up to her resignation, but failed to take advantage thereof." *Murphy v. Dep't of Educ. of City of New York*, 155 A.D. 3d 637, 640 (2d Dep't 2017) (citation omitted).

Consistent with that precedent, Plaintiff could show that conditions at Fidelity were intolerable because Fidelity had a pattern of failing to address credible claims of sexual harassment. Moreover, accepting Plaintiff's allegations as true, Fidelity consistently required Plaintiff to confront her harasser alone, which plausibly made the conditions even less tolerable. The precise weight of the events in Garden City is disputable, but Plaintiff's allegation that her complaints were largely ignored by Fidelity on separate occasions, if proven, is some evidence that Fidelity did not have an efficacious process for handling complaints of sexual harassment. That evidence would generally support Plaintiff's position that she did not fail to take advantage of an alternative short of resignation. Thus, even though the Garden City allegations are not themselves actionable under the NYCHRL, they may bolster Plaintiff's constructive discharge theory, which arises from her employment in Manhattan.

Fidelity argues that allowing the allegations to stand would "potentially expand the scope of discovery into allegations that have no legal basis." Def. Mem. of Law at 8. To be clear, the relevant question is not whether Plaintiff was in fact harassed by her manager in Garden City. The only relevant issues are Fidelity's knowledge of Plaintiff's complaints of harassment in Garden City and Fidelity's response once it became aware of her complaints. Accordingly, there is to be no discovery into whether Plaintiff was actually harassed by her manager while employed at the Garden City branch.

5

For those reasons, factual allegations about Plaintiff's Garden City employment that are unrelated to Fidelity's knowledge of Plaintiff's reported harassment and Fidelity's response to Plaintiff's complaints should be stricken as "immaterial" and "impertinent." In particular, paragraphs 21 to 31 of the Complaint, which detail Plaintiff's alleged harassment at Garden City, must be stricken because the Complaint does not specify which of those incidents, if any, were reported or otherwise made known to Fidelity's human resources department.

Fidelity's motion to strike is therefore GRANTED as to paragraphs 21 to 31 of the Complaint. Nevertheless, because Plaintiff may be able to allege the specifics of what she communicated to Fidelity, which could include the facts contained in some or all of the stricken paragraphs, Plaintiff is granted leave to amend her complaint to plead any additional facts as to Fidelity's knowledge and response.

**B. Defendant's Motion to Dismiss**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

To plead a sex discrimination claim under the NYCHRL, Plaintiff need only allege facts showing that she was treated "less well" because of her sex. *See e.g.*, *Ellison v. Chartis Claims,*

6

*Inc.*, 2019 WL 6519780, at *3 (2d Dep't Dec. 4, 2019) ("[L]iability for a harassment/hostile work environment claim is proven where a plaintiff proves that he or she was treated less well than other employees because of the relevant characteristic."); *Williams v. New York City Hous. Auth.*, 61 A.D. 3d 62, 78 (1st Dep't 2009) (citing N.Y.C. Administrative Code, § 8-107(1)(a)). This provision is to be broadly construed in order to effectuate the uniquely "broad and remedial purposes of the City's Human Rights Law." *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 575–76 (S.D.N.Y. 2012) (citing N.Y.C. Admin. Code. § 8–130 ("The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights . . . have been so construed.")). As a function of that expansive construction, "the NYCHRL does not require [a plaintiff to prove] either materially adverse employment actions or severe and pervasive conduct." *Mihalik v. Credit Agricole Cheuvreux N. Am.*, 715 F.3d 102, 114 (2d Cir. 2013).

The NYCHRL does not distinguish between claims of "discrimination" and "harassment" or hostile work environment, which is a term of art borrowed from the more restrictive Title VII jurisprudence. *See Williams*, 61 A.D. 3d at 75 ("Despite the popular notion that 'sex discrimination' and 'sexual harassment' are two distinct things, it is, of course, the case that the latter is one species of sex- or gender-based discrimination. There is no 'sexual harassment provision' of the [NYCHRL] to interpret; there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender."). In other words, a plaintiff states a claim for a violation of the NYCHRL by alleging facts indicating unequal treatment for a discriminatory purpose by an employer, regardless of whether the plaintiff pleads a "hostile work environment," harassment, or other category of

7

discrimination. *See id.* at 78 ("For [NYC]HRL liability, therefore, the primary issue for a trier of fact in harassment cases, as in other terms-and-conditions cases, is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of her gender.").

For that reason, Plaintiff's "hostile work environment" and "discrimination" claims are misnomers. In her first cause of action, Plaintiff alleges that she was treated less favorably than male employees because Fidelity "intentionally created a hostile work environment for Plaintiff due to her sex." *See* Compl. ¶ 73. The term hostile work environment, derived from the Title VII context, generally refers to harassment that is "severe and pervasive," *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986), a requirement inapplicable to the NYCHRL, *see Mihalik*, 715 F.3d at 114. In her second claim, Plaintiff alleges that she suffered unlawful discrimination because Fidelity undertook "an adverse employment action" by "constructive[ly] discharg[ing]" her. Compl. ¶ 80. The NYCHRL, however, also "does not require [] materially adverse employment actions" to be pleaded. *Mihalik*, 715 F.3d at 114. Plaintiff therefore appears to have mischaracterized and overstated her own burden under the NYCHRL. *See* Compl. ¶¶ 73, 80.

For purposes of clarity, Plaintiff's two claims are better construed as one claim of violation of the NYCHRL, with an allegation of constructive discharge; if proven, the constructive discharge would be relevant to calculating damages, if liability is established.[5] *See, e.g.*, *Teran v. JetBlue Airways Corp.*, 132 A.D. 3d 493, 494–95 (1st Dep't 2015) ("Plaintiff may

---

[5] The Court notes that federal courts in the Title VII context have held that constructive discharge is not a standalone claim but rather "a component of a discrimination case or is relevant to the scope of potential recovery on discrimination or retaliation claims." *See, e.g.*, *Hammel v. Marsh USA Inc.*, 79 F. Supp. 3d 234, 245–46 (D.D.C. 2015) ("Courts in this circuit have held that constructive discharge is not an independent basis for Title VII liability."). Proving constructive discharge may entitle a plaintiff to lost earnings as compensatory damages. *See, e.g.*, *Belton v. Lal Chicken, Inc.*, 138 A.D. 3d 609, 610–11 (1st Dep't 2016).

8

assert her constructive discharge theory with respect to her retaliation cause of action . . . and with respect to her sexual harassment claim."). Nevertheless, whether Plaintiff's constructive discharge theory is treated as a standalone claim or a damages issue, the factual allegations are adequate to survive Fidelity's motion to dismiss.

1. *Plaintiff has adequately pleaded a violation of the NYCHRL.*

Fidelity argues that Plaintiff's discrimination claims, as distinguished from her claim of retaliation, must be dismissed because she failed to allege discriminatory intent, *i.e.*, that her supervisors harassed her because she is a woman. Accepting the truth of Plaintiff's allegations, her supervisors subjected her to unwanted physical and sexual contact, multiple unwelcome romantic advances, repeated commentary about her appearance and attractiveness, and exclusionary stereotypes about the traditional role of a woman in the workplace and home. Even absent the specific identification of a male comparator, those factual allegations adequately support a plausible inference that Plaintiff's supervisors would not have treated a male the same way and that Plaintiff was treated "less well" because of her gender.[6]

Because the NYCHRL is not a "general civility code," Plaintiff must allege a nexus between her sex and the discriminatory conduct; in other words, she must show that the mistreatment was motivated by discriminatory animus. *Rothbein v. City of New York*, No. 18-CV-5106, 2019 WL 977878 at *9 (S.D.N.Y. Feb. 28, 2019) (citing *Mihalik*, 715 F.3d at 110). A discriminatory motive can be shown either by pleading direct evidence of discrimination,

---

[6] As the Second Circuit has held in the Title VII context, a plaintiff at the pleading stage bears only a "*minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Given the NYCHRL's broader remedial purposes, imposing a stricter pleading requirement than what even Title VII requires would be incongruous.

including "comment[s] indicating prejudice on account of a protected characteristic," or by pleading facts showing that male comparators were treated better than Plaintiff was. *Id.* at *9.

Direct evidence of a discriminatory motive includes comments referring to employees by slurs or demeaning stereotypes that "make clear that the employee in question is not truly welcome in the workplace." *Raji v. Societe Generale Americas Securities*, No. 15-CV-1144, 2018 WL 1363760 at *5 (S.D.N.Y. Feb. 28, 2018) (recognizing a discriminatory motive where plaintiff's superiors repeatedly referred to him by ethnic and homophobic slurs); *see also Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) ("[S]tereotyped remarks can certainly be evidence that gender played a part in an adverse employment decision." (citation omitted)). Even a single discriminatory comment can be sufficient to evince a discriminatory motive. *Williams*, 61 A.D. 3d at 80 n.30 ("[O]ne can easily imagine a single comment that objectifies women being made in circumstances where that comment would, for example, signal views about the role of women in the workplace and be actionable."). Nevertheless, comments that a reasonable person would view as "petty slights and trivial inconveniences" do not reveal a discriminatory motive. *Mihalik*, 715 F.3d at 111.

In this case, Plaintiff has adequately alleged that Wiesen and Young treated Plaintiff "less well" than they treated her male colleagues by repeatedly initiating unwanted sexual advances and romantic contacts. Compl. ¶¶ 41, 50–52. There is no serious question that such behavior constitutes treating an employee "less well" based on the employee's sex. *See Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014) ("Any reasonable observer, if asked what motivated [a male supervisor to invite a female employee to a bar, stroke her hand, and kiss her], would almost certainly answer that [his] actions were prompted by the female employee's gender, not by her interest in collecting stamps or her affection for a particular sports team.");

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011) (holding that reasonable jury could find that single instance of unwanted genital contact is actionable); *Suri v. Grey Global Group, Inc.*, 164 A.D. 3d 108, 116–17 (1st Dep't 2018) (denying summary judgment on NYCHRL claim because defendant commented on plaintiff's physical appearance, put his hand on her thigh, and diminished her role after he was rejected).

Plaintiff has alleged that Wiesen also made multiple offensive statements with sexual connotations, such as commenting on Plaintiff's attractiveness and telling Plaintiff that she would be "staying late with [him]" and that "his genitals worked." Compl. ¶¶ 49, 52. Similar to physical acts of harassment, unwanted comments about an employee's attractiveness and appearance have an exclusionary effect in the workplace and constitute unequal treatment. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 568–69, 588 (S.D.N.Y. 2011) (denying summary judgment on NYCHRL claim because plaintiff's supervisor made uncomfortable comments that were "sexual in nature," including statements about plaintiff's attractiveness and dress). Such behavior objectifies female employees, suggests that women should seek male approval, undermines their standing as colleagues, and discourages women from remaining on the job. *See Mihalik*, 715 F.3d at 111 ("Even 'a single comment that objectifies women . . . signal[ing] views about the role of women in the workplace [may] be actionable.'" (quoting *Williams*, 61 A.D. 3d at 80 n.30)). In short, the sexual nature of Wiesen's comments supports a plausible inference that a male employee would not have been treated the same way.

Finally, Wiesen repeatedly expressed exclusionary stereotypes about women in the workplace and then acted on that prejudice. *See* Compl. ¶¶ 49, 52, 59. When he discovered that Plaintiff was planning on having a child, Wiesen allegedly assumed that Plaintiff would prioritize her family over her career, a pernicious belief that women who are parents are less

11

committed employees than men who are parents. *Id.* ¶ 59. Wiesen then actualized his discriminatory belief that Plaintiff was likely to stop working after starting a family by taking steps to minimize Plaintiff's role and pave the way for her exit from Fidelity—reducing her work assignments, giving her multiple written warnings, placing her on a performance review, and issuing a "corrective action." Compl. ¶¶ 53–60. Although Fidelity argues that Plaintiff failed to allege any discriminatory motivation or intent, one can reasonably infer that Wiesen would not have predicted career suicide for expectant fathers or male breadwinners.

The non-binding authority cited by Fidelity is distinguishable. While the Court agrees that unequal treatment wholly untethered from the employee's protected characteristic is not sufficient to state a claim of discrimination, the nature of the unequal treatment in this case, as explained above, is infused with sex-based bias. In the cases cited by Fidelity, the alleged unequal treatment was not of a sexual nature and was not accompanied by any other conduct from which a sex-based motive could be inferred.[7] Instead, the female plaintiffs in those cases attempted to allege a discrimination claim based on the fact that they are female and the fact that they were mistreated, with no facts that create a discernible nexus between those two allegations. Because those cases did not involve unwanted sexual advances or offensive remarks based on sex stereotypes, they are factually inapposite to this case.[8]

---

[7] *See, e.g.*, *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 n.3 (2d Cir. 2013) (dismissing discrimination claim based on alleged relocation, demotion, and negative remarks containing no express or implied reference to sex); *Mooney v. City of New York*, No. 18-CV-328, 2018 WL 4356733, at *7 (S.D.N.Y. Sept. 12, 2018) (holding that no discriminatory motive could be inferred from criticism of plaintiff's performance, employer's requirement that plaintiff take vacation time instead of sick leave, plaintiff's transfer to another office, and setting undesirable shift schedules); *Eng v. City of New York*, No. 15-CV-1282, 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017) ("Nor does Plaintiff claim—even conclusorily—that the alleged pay disparities occurred because of her age or gender."), *aff'd*, 715 F. App'x 49 (2d Cir. 2017); *Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at *7 (S.D.N.Y. Feb. 5, 2016) ("[T]hese factual allegations, as pled, bear no link to a protected characteristic and . . . demonstrate workplace difficulties entirely consistent with . . . non-gender-based personality disputes.").

[8] Some of the alleged misconduct in this case, such as the steering of an angry customer into Plaintiff's office, standing alone, does not support any inference of discriminatory intent. Nonetheless, in the context of an employment discrimination action, the Court must consider all allegations "cumulatively in order to obtain a realistic view of the work environment." *See Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation

Nor can Fidelity rely on cases dismissing complaints based on "stray" and "mildly offensive" remarks. In *Simon v. City of New York*, a supervisor's comment that the plaintiff "liked" the supervisor and question about when plaintiff was leaving work were insufficient proof of discriminatory intent and did not "signal[] views about the role of women in the workplace." No. 17-CV-9575, 2019 WL 916767, at *10 (S.D.N.Y. Feb. 14, 2019). In contrast, in this case, Wiesen, in addition to other alleged misconduct, made disparaging remarks that tied Plaintiff's future at Fidelity to her marital and childbearing decisions. Fidelity also relies on *Carter v. Verizon* for the proposition that "[i]mproper office decorum" is not actionable. *See* No. 13-CV-7579, 2015 WL 247344, at *10 (S.D.N.Y. Jan. 20, 2015). But even in that case, the district court ultimately concluded that the plaintiff stated a plausible violation of the NYCHRL based on a female supervisor initiating unwanted physical contact and asking the plaintiff whether he had money for her. *See id.* at *12. The alleged conduct in this case was of the same nature and cannot be written off as mere "improper office decorum." Finally, Fidelity's argument that Plaintiff's male colleagues "could have" been subjected to the same harassment[9] misses the point—the operative question is not whether a male colleague could conceivably be punished for intending to start a family. The question is whether Plaintiff has plausibly alleged that she was treated less well for being a woman and intending to start a family. She has done so.

For those reasons, Fidelity's argument that Plaintiff failed to allege discriminatory intent is rejected.

---

omitted). In other words, individual acts of harassment—even those that may not independently appear discriminatory—may be considered as part of a concerted effort to discriminate against an employee if there are other actions that suggest a discriminatory intent behind the otherwise gender-neutral acts.

9     Def. Mem. of Law. (Dkt. 11) at 18 ("Wiesen could have made any of those same comments to Plaintiff's male colleagues.").

*2. Plaintiff has adequately pleaded constructive discharge.*

Plaintiff also alleges that she was constructively discharged as a result of the sustained discrimination, *see* Compl. ¶¶ 71, 80, a theory that, according to Fidelity, fails as a matter of law. To adequately plead constructive discharge, Plaintiff must plausibly allege that Fidelity "deliberately created working conditions so intolerable, difficult, or unpleasant that a reasonable person would have felt compelled to resign."[10] *Tulino v. Ali*, No. 15-CV-7106, 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019) (quoting *Short v. Deutsche Bank Sec., Inc.*, 913 N.Y.S. 2d 64, 66 (1st Dep't 2010)). Accordingly, a plaintiff must allege more than just worse treatment—the lesser treatment must rise to the level of intolerability. *See La Porta v. Alacra, Inc.*, 142 A.D. 3d 851, 852–53 (1st Dep't 2016). Whether Fidelity deliberately created working conditions that rise to the level of intolerability is a close question, and Plaintiff's burden will increase at later stages of this litigation.

At this stage, Plaintiff has plausibly alleged that Fidelity "deliberately" subjected her to repeated harassment. Acting "deliberately" requires more than a mere "lack of concern" or "negligence or ineffectiveness." *Polidori v. Societe Generale Groupe*, 39 A.D. 3d 404, 405 (1st Dep't 2007) (citing *Whidbee v. Garzarelli Food Specialties*, 223 F.3d 62, 74 (2d Cir. 2000)). Here, Plaintiff made repeated complaints about being harassed in Fidelity's Manhattan office, *see* Compl. ¶¶ 62, 64, 67, but Fidelity allegedly took no action other than requiring her to address the harassment herself by meeting one-on-one with Wiesen, the alleged harasser, *see* Compl. ¶¶ 65, 68. Such a response is more than "ineffective"—indeed, it was likely worse than

---

[10] Although the NYCHRL is generally construed more broadly than Title VII, the standard for constructive discharge is the same for both. *See Teran*, 132 A.D. 3d at 494 ("[P]laintiff raised issues of fact as to whether defendant constructively discharged her by deliberately creating working conditions that were so intolerable 'that a reasonable person would have felt compelled to resign.'" (quoting *Short v. Deutsche Bank Sec., Inc.*, 79 A.D. 3d 503, 504, (1st Dep't 2010))); *see also E.E.O.C. v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 338–39 (S.D.N.Y. 2014) ("New York state courts have articulated an NYCHRL constructive discharge standard that is identical to the Title VII standard." (citations omitted)).

doing nothing, as it forced Plaintiff to have more contact with the source of her harassment. This response echoed Fidelity's reaction to Plaintiff's complaints in Garden City, where she also complained of harassment by her manager and was instructed by Fidelity's human resources department to speak with the harasser privately. Compl. ¶¶ 13, 32–33. Certainly, the complaint is not the model of clarity and would benefit from greater specificity as to the timing, frequency, and content of Plaintiff's internal complaints. Nevertheless, Plaintiff's allegations of repeated complaints to Fidelity and Fidelity's pattern of exacerbating the harassment, including when Plaintiff's role was being diminished and her job security was being threatened, support an inference of deliberate disregard for Plaintiff's wellbeing in the workplace and an implicit desire for Plaintiff to leave Fidelity's employ.

To establish intolerablity, "[a] plaintiff must show more than that she was dissatisfied with her assignments, that she felt that the quality of her work had been unfairly criticized or that working conditions were difficult or unpleasant." *Alleyne v. Four Seasons Hotel—New York*, No. 99-CV-3432, 2001 WL 135770, at *13 (S.D.N.Y. Feb. 15, 2001), *aff'd sub nom. Alleyne v. Four Seasons Hotel New York*, 25 F. App'x 74 (2d Cir. 2002). The plaintiff must show that a reasonable person would have "had no alternative but to resign." *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1157 (2d Cir. 1993) (affirming summary judgment against constructive discharge because plaintiff could have lodged complaint to human resources rather than resigning). Indeed, intolerability requires an even higher threshold than a claim of a hostile work environment. *See Gaffney v. City of New York*, 101 A.D. 3d 410, 411 (1st Dep't 2012).

The Court, drawing all reasonable inferences in Plaintiff's favor, "cannot conclude that, as a matter of law, Plaintiff's allegations are insufficient to proceed."[11] *Pryor*, 992 F. Supp. 2d at 262. In *Pryor*, the district court denied a motion to dismiss because a reasonable person could have felt compelled to resign if a supervisor "subjected her to sexual advances and made several forcible attempts to kiss her." *Id.* (citing *Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011) ("[T]he Court cannot say that no reasonable jury would find that being rubbed with a supervisor's genitals, even if for ten seconds, would cause [plaintiff's] working conditions to be such that he would feel compelled to resign.")). Similarly, in *Belton v. Lal Chicken, Inc.*, the appellate division found sufficient evidence to support a jury finding of constructive discharge where an employee "testified that she was subjected to unwanted touching and sexual advances for months by her supervisor, despite telling him that she was not interested." 138 A.D. 3d 609, 610 (1st Dep't 2016). Courts have also indicated that an employer's suggestion that an employee may be terminated, whether express or implied, could support a finding of constructive discharge. *See, e.g.*, *Alleyne*, 2001 WL 135770, at *14 (citing *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993)). A constructive discharge can also occur via a combination of a reduction in workload, a change in responsibilities, the absence of advancement opportunities, and being subjected to embarrassing or humiliating treatment. *See Halbrook v. Reichhold Chemicals, Inc.*, 735 F. Supp. 121, 128 (S.D.N.Y. 1990) ("[Plaintiff]'s constructive discharge claim must be considered as a whole.").

Plaintiff's allegations bear significant similarities to each of those cases, in that Young allegedly touched her genitals without consent and Wiesen allegedly subjected her to constant

---

[11] Because the intolerability threshold is demanding, the Court cannot say that Plaintiff is *likely* to prevail in proving to a factfinder that her conditions of employment were so unacceptable as to compel her resignation—but likelihood of success is not the applicable standard.

16

unwanted advances, suggested that her employment may be terminated because of her anticipated pregnancy, reduced her work responsibilities, and gave her negative performance evaluations. Nor was there any apparent alternative to resignation, inasmuch as Plaintiff had made multiple complaints to Fidelity's human resources department, in both Manhattan and Garden City, to no avail. Taking Plaintiff's factual allegations as a whole and drawing all reasonable inferences in her favor, Plaintiff has plausibly alleged that she had no choice but to resign in order to avoid intolerable harassment and other forms of discrimination.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Fidelity's motion to strike is GRANTED IN PART and DENIED IN PART; the motion to strike is granted with respect to paragraphs 21–31. Plaintiff shall have leave to amend her complaint, no later than **January 31, 2020**, to allege additional facts as to Fidelity's knowledge of and response to Plaintiff's Garden City complaints, and to re-plead her first and second causes of action in a manner consistent with this opinion, particularly part II.B.

By agreement of the parties, discovery in this case has been stayed pending decision on this motion. The parties are ordered to appear before the undersigned for an Initial Pretrial Conference ("IPTC") in accordance with Rule 16 of the Federal Rules of Civil Procedure on **February 21, 2020, at 10:00 a.m.** No later than **February 13, 2020**, the parties must submit joint pre-conference submissions consistent with the Notice of Initial Pretrial Conference issued on May 23, 2019, Dkt. 12.

**SO ORDERED.**

Date: January 9, 2020
New York, New York

**VALERIE CAPRONI**
**United States District Judge**